JOURNAL ENTRY and OPINION
{¶ 1} Appellant Victoria Shropshire appeals her conviction for aiding and abetting a felonious assault. On appeal, she assigns the following errors for our review:
"I. The appellant has been deprived of her liberty without due process of law, by which her conviction for aiding and abetting Mr. Kelley in the commission of felonious assault was not supported by evidence sufficient to prove guilt beyond a reasonable doubt."
"II. The appellant was denied her right to a trial by jury as the trial court erred in instructing the jury that they could convict Ms. Shropshire by finding that she failed to act and by including instructions for the crime of conspiracy."
 {¶ 2} Having reviewed the record and pertinent law, we affirm the trial court's decision. The apposite facts follow.
 {¶ 3} On December 15, 2003, the Cuyahoga County Grand Jury indicted Shropshire for two counts of complicity in the commission of a felonious assault. The first count alleged that Shropshire knowingly solicited or procured the primary offender, whereas the second alleged that she aided or abetted the primary offender. In this case, the primary offender was Shropshire's boyfriend. The theory of the State's case was Shropshire aided and abetted Andres Kelly in the felonious assault of Harold Pearl.
 {¶ 4} At trial, Harold Pearl described the events leading to his being shot by Kelly. He explained that he had seen Shropshire drive through the parking lot of the supermarket where he worked. He called out her name, but she did not acknowledge him.
 {¶ 5} Later that day, as Pearl was walking along the street, Andres Kelley drove alongside him. Kelley asked Pearl if he had seen Shropshire. Pearl told him he had seen her earlier that day. Upon hearing this, Kelley became angry and stated: "I'm going to whoop that bitch ass" and then drove away.[1]
 {¶ 6} Later that evening, Shropshire came to see Pearl who was at a neighbor's house. When Shropshire saw Pearl, she accused him of lying to Kelley. Pearl told her he had not lied to Kelley, and had only told him he had seen her earlier in the day. Thereafter, a heated exchange took place between them.
 {¶ 7} Suddenly, Kelley appeared from behind some bushes holding a shotgun in his hand. Kelley ordered Pearl to get on the ground. Pearl refused and Kelley put the barrel of the gun to Pearl's cheek and threatened to shoot him. Pearl got on the ground, and Kelley kicked him in the face. Pearl told Shropshire she had double crossed him. He also told his sister who was at the scene to go home. When Kelley turned to look at Pearl's sister, Pearl got up and started to run to the back of the house. As he was trying to jump over a neighbor's fence, Kelley fired. The shotgun blast hit Pearl in the lower back, right arm, and shoulder. Kelley pursued Pearl, but retreated after Pearl fell into the neighbor's yard.
 {¶ 8} Angela Pearl, the victim's sister, testified that Kelley emerged from behind a nearby shrub while Shropshire and the victim were arguing. Kelley pointed a shotgun at her brother and ordered him to get on the ground. Shropshire told Kelley that Angela was the victim's sister and that she could identify them. Kelley responded by pointing the gun at Angela. Her brother then got up, punched Kelley and started to run to the back of the house. Kelley shot him as he was trying to scale the neighboring fence.
 {¶ 9} The shooter and primary offender, Andres Kelley, testified that he was Shropshire's boyfriend at the time of the shooting. According to Kelley, on September 1, 2002, Pearl told him he had seen Shropshire earlier that day. Upon hearing this, he became angry; he believed it contradicted what Shropshire had told him. He confronted Shropshire about lying to him, but she denied it. Consequently, the two agreed to confront Pearl to prove who was lying.
 {¶ 10} Kelley testified that Shropshire knew he was angry and upset about the situation. Also, Shropshire had seen him become violent when he was angry. Further, she knew he had a shotgun, which he kept under the porch of her mother's house. Finally, she saw him retrieve the shotgun before they left to find Pearl; she knew he was going to confront Pearl with it.
 {¶ 11} After the State rested, Shropshire moved for a judgment of acquittal. The trial court granted the motion as to the first count of the indictment, but denied it as to the second count. The jury found Shropshire guilty of aiding and abetting Andres Kelley in feloniously assaulting Pearl. The trial court sentenced Shropshire to a term of two years probation. Shropshire now appeals.
 {¶ 12} In the first assigned error, Shropshire argues her conviction was not supported by sufficient evidence. We disagree.
 {¶ 13} A challenge to the sufficiency of evidence supporting a conviction requires the appellate court to determine whether the State met its burden of production at trial.[2] On review for legal sufficiency, the appellate court's function is to examine evidence admitted at trial and determine whether such evidence, if believed, would convince the average person of the defendant's guilt beyond a reasonable doubt.[3] In making its determination, an appellate court must view the evidence in a light most favorable to the prosecution.[4]
 {¶ 14} Contrary to Shropshire's argument, the record contains sufficient evidence to support the charge of aiding and abetting. The prosecution argued that Shropshire acted in complicity with Kelley in the felonious assault of Pearl. R.C. 2923.03 prohibits complicity with others to commit crimes and provides as follows:
"(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
"(1) Solicit or procure another to commit the offense;
"(2) Aid or abet another in committing the offense;
"(3) Conspire with another in committing the offense in violation of Section 2923.01 of the Revised Code;
"(4) Cause an innocent or irresponsible person to commit the offense."
 {¶ 15} A person aids and abets another when he assists another in the accomplishment of a common design or purpose.[5] The accomplice's criminal intent may be inferred, by direct or circumstantial evidence, and from the presence, companionship, and conduct of the accomplice both before and after the offense is committed.[6]
 {¶ 16} When the evidence is viewed in the light most favorable to the prosecution, the jury could find that Shropshire and Kelley pre-arranged in concert to confront Pearl and the confrontation led to the felonious assault. Here, the evidence indicates that Shropshire knew Kelley was upset when he learned that Pearl had seen her earlier that day. She also knew Kelley behaved violently when he was upset. Further, Shropshire knew Kelley kept a shotgun under the porch of her mother's house, which he retrieved prior to driving to Pearl's house.
 {¶ 17} Moreover, Shropshire knew that in Kelley's highly agitated, upset, and angry state, the confrontation could escalate into violence. A person acts knowingly regardless of his purpose when he is aware that his conduct will probably cause a certain result or he is aware that his conduct will probably be of a certain nature. Knowingly also means that a person is aware of the existence of the facts that his acts will probably cause a certain result or be of a certain nature.[7]
 {¶ 18} Most importantly, Shropshire was instrumental in getting Pearl outside the house where the confrontation took place, which culminated in the felonious assault. At trial, the following exchange took place:
"State: And she knew you were there that evening to find Harold, correct?
Kelley: Yes.
State: And you had the shotgun and she knew it and she was there to help you find Harold, correct?
Kelley: Yes.
State: Do you think you could have got Harold out of that house if the defendant wasn't with you at that time?
Kelley: No."[8]
 {¶ 19} Based upon our review of the record in compliance with the applicable standards, construing the evidence in the light most favorable to the prosecution, we find any rational trier of fact could have properly found Shropshire committed the offense charged beyond a reasonable doubt. Accordingly, we overrule the first assigned error.
 {¶ 20} In the second assigned error, Shropshire argues the trial court erred in instructing the jury that they could convict her if they found that she failed to act, and by instructing the jury on the crime of conspiracy. We disagree.
 {¶ 21} A charge to the jury should be a plain, distinct and unambiguous statement of the law as applicable to the case made before the jury by the proof adduced.[9] It is well established that a trial court should confine its instructions to the issues raised by the pleadings and the evidence.[10]
 {¶ 22} In Ohio, it is well established that the trial court will not instruct the jury where there is no evidence to support an issue.[11]
However, requested instructions should ordinarily be given if they are correct statements of law applicable to the facts in the case and reasonable minds might reach the conclusion sought by the specific instruction.[12] However, the trial court is not required to give a proposed jury instruction in the exact language requested by its proponent, even if it properly states an applicable rule of law. The court retains discretion to use its own language to communicate the same legal principles.[13]
 {¶ 23} When reviewing such an assignment of error, a single challenged jury instruction may not be reviewed piecemeal or in isolation but must be reviewed within the context of the entire charge.[14] Accordingly, the proper standard of review for an appellate court is whether the trial court's refusal to give a defendant's requested instruction constituted an abuse of discretion under the facts and circumstances of the case.[15]
The term abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.[16]
 {¶ 24} Shropshire first complains that the trial court's instruction for causation was improper. We are not persuaded.
 {¶ 25} The standard instruction on causation is set forth at 4 Ohio Jury Instructions (2000), 64-65, Section 409.55, which provides, in part:
"1. CAUSE. * * *. Cause is an essential element of the offense. Cause is an act or failure to act which in a natural and continuous sequence directly produces the (death) (physical harm to [person] [property]), and without which it would not have occurred.
"2. NATURAL CONSEQUENCES. The defendant's responsibility is not limited to the immediate or most obvious result of the defendant's act or failure to act. The defendant is also responsible for the natural and foreseeable (consequences) (results) that follow, in the ordinary course of events, from the act or failure to act."
 {¶ 26} This court has upheld the above standard jury instruction on causation.[17] Also, in State v. Gross,[18] the Supreme Court of Ohio upheld this instruction in a murder case and reaffirmed the requirement that a reviewing court consider a challenged instruction in the context of the entire charge. Consequently, having reviewed the challenged instruction in context of the overall charge to the jury, case law supports that the trial court correctly used the above standard jury instruction on causation.
 {¶ 27} Shropshire next complains that the trial court erred in including instructions on the crime of conspiracy. We are not persuaded.
 {¶ 28} We note Shropshire failed to object to the jury instructions and so we must review this issue under the plain error standard of review.[19] In order to warrant reversal based on plain error, the error must be such that, but for the error, the outcome of the trial would have clearly been different.[20] Such an error would not warrant reversal unless it affected the outcome of the trial or created a manifest miscarriage of justice.[21]
 {¶ 29} The record reveals the trial court gave the following charge to the jury:
"The Defendant, Victoria Shropshire, is charged with complicity in the commission of felonious assault. Before you could find the Defendant guilty of complicity in the commission of a felonious assault, you must find beyond a reasonable doubt that on or about the first day of September, 2002, and in Cuyahoga County, the Defendant knowingly aided or abetted Andres Kelley to commit felonious assault.
"Aided or abetted means supported, assisted, encouraged, cooperated with, advised, or incited.
"A conspiracy is the planning or aiding in the planning of the commission of an offense with one or more person and/or agreeing with one or more other persons that one or more of them will engage in conduct with the purpose to commit, promote, or facilitate the commission of a specific offense."[22]
 {¶ 30} Though, the trial court gave a general instruction on the definition of conspiracy, the court also instructed the jury on the actual charge of the indictment. Further, the crime of complicity encompasses three different theories, namely: solicitation, aiding and abetting, and conspiracy.[23] Here, Shropshire was convicted under the aiding and abetting theory of complicity.
 {¶ 31} After reviewing the instructions given by the trial court, we note each complied with the Ohio Jury Instructions and did not affect the trial's outcome. Therefore, we do not find plain error. Accordingly, Shropshire's second assigned error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sweeney, J., and Gallagher, J., concur.
[1] Tr. at 183.
[2] State v. Thompkins (1997), 78 Ohio St.3d 380.
[3] Id.; State v. Fryer (1993), 90 Ohio App.3d 37.
[4] Id. at 43.
[5] State v. Minor (Mar. 2, 2000), 5th Dist. No. 99CA63, at 4 (quoting Black's Law Dictionary (6th ed. 1990).
[6] State v. Nievas (1997), 121 Ohio App.3d 451, 456-457.
[7] State v. Bissantz (1982), 3 Ohio App.3d 108, 111.
[8] Tr. at 286.
[9] Marshall v. Gibson (1985), 19 Ohio St.3d 10, 12.
[10] Becker v. Lake Cty. Mem. Hosp. West (1990), 53 Ohio St.3d 202,208.
[11] Riley v. Cincinnati (1976), 46 Ohio St.2d 287.
[12] Murphy v. Carrollton Mfg. Co. (1991), 61 Ohio St.3d 585, 591.
[13] Youssef v. Parr, Inc. (1990), 69 Ohio App.3d 679, 690.
[14] State v. Hardy (1971), 28 Ohio St.2d 89; State v. Price (1979),60 Ohio St.2d 136; State v. Wise (Jan. 29, 1993), 6th Dist. No. 91 WC 113.
[15] State v. Wolons (1989), 44 Ohio St.3d 64.
[16] State v. Adams (1980), 62 Ohio St.2d 151, 157; Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
[17] State v. Allen (Jan. 7, 2003), Cuyahoga App. No. 76672, 2003-Ohio-24.
[18] 97 Ohio St.3d 121, 2002-Ohio-5524.
[19] State v. Waddell (1996), 75 Ohio St.3d 163, 166, 1996-Ohio-100;State v. Joseph (1995), 73 Ohio St.3d 450, 455, 1995-Ohio-288, reconsideration denied (1995), 74 Ohio St. 3d 1423, certiorari denied (1996), 516 U.S. 1178, 134 L. Ed.2d 222, 116 S. Ct. 1277.
[20] Joseph, 73 Ohio St.3d 450, 1995-Ohio-288; Waddell,75 Ohio St.3d at 166.
[21] State v. Mitchell (1989), 60 Ohio App.3d 106, 108, appeal dismissed (1990), 49 Ohio St.3d 709. See, also, State v. Sims (1982),3 Ohio App.3d 331.
[22] Tr. at 391-392.
[23] State v. Hoop (1999), 134 Ohio App.3d 627.