[Cite as *State v. Clopton*, 2011-Ohio-2392.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 95297**

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## SHARDAY CLOPTON

DEFENDANT-APPELLANT

---

**JUDGMENT:**
CONVICTION AFFIRMED; REMANDED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-519602

**BEFORE:**   S. Gallagher, J., Stewart, P.J., and Rocco, J.

**RELEASED AND JOURNALIZED:**   May 19, 2011

**ATTORNEY FOR APPELLANT**

Michael P. Maloney
24441 Detroit Road
Suite 300
Westlake OH 44145

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

BY: Katherine Mullin
Assistant Prosecuting Attorney
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, OH 44113

SEAN C. GALLAGHER, J.:

**{¶ 1}** Appellant Shardey[1] Clopton appeals her conviction in Cuyahoga County Common Pleas Court Case No. CR-519602 on one count of endangering a child. For the following reasons, we affirm Clopton's conviction. Before addressing the issues raised on appeal, we sua sponte remand the case for the limited purpose of addressing a clerical error in the

sentencing entry. In the trial court's sentencing entry dated May 21, 2010, the court noted that the violation of R.C. 2919.22(A) was a felony of the second degree. A violation of R.C. 2919.22(A) is a felony of the third degree if the violation results in serious physical harm to the victim. R.C. 2919.22(E)(2)(c). The trial court correctly stated this on the record at sentencing, so we remand the case to the trial court for the limited purpose of issuing a nunc pro tunc entry correcting the sentencing entry to accurately reflect the court's order.

{¶ 2} Clopton and her codefendant Maurice Hockett have two children, V.H. and N.H. V.H. was born with a congenital impairment that required the use of a permanently attached feeding tube. Clopton and Hockett had an ongoing referral with the Cuyahoga County Department of Children and Family Services ("CCDCFS") for the care of V.H. In May 2008, CCDCFS sought an emergency order of custody over V.H. In July 2008, Clopton gave birth to N.H. Clopton and Hockett refused home visits required by CCDCFS on multiple occasions as they related to V.H. Clopton, when finally allowing a home visit, told CCDCFS employees that doctors were concerned with N.H.'s weight. During that home visit, Clopton talked on her cell phone the entire time and failed to engage the CCDCFS employee in any meaningful manner.

---

[1] Clopton's first name is misspelled on the indictment as "Sharday."

In late September 2008, CCDCFS learned that N.H. had missed three medical appointments intended to assess her development and the weight issue. On November 24, 2008, while at the hospital visiting V.H., CCDCFS offered child care vouchers to Clopton in return for taking N.H. to the emergency room for a checkup. N.H. was immediately admitted for failure to thrive, meaning her weight and growth rate were abnormally low.

{¶ 3} Dr. Shenandoah Robinson, the treating pediatric neurosurgeon, testified that N.H. was only at the 3 percent growth curve for her age and not appropriately gaining weight. N.H. started to gain weight after being fed on a regular schedule while admitted in the hospital. The hospital staff administered an X-ray of N.H.'s wrist to check for organic causes of the malnourishment. The X-ray revealed evidence of trauma that further led to CT and MRI scans that revealed abnormal fluid collections around her brain. Dr. Robinson explained that type of damage seen to the brain could only be inflicted by non-accidental causes. There was little evidence as to exactly when or how the wrist and brain traumas occurred, and no evidence establishing who caused the injuries. Both Clopton and Hockett traded turns caring for the children.

{¶ 4} Clopton stated that N.H. was fed regularly, breast fed twice daily, given baby cereal and fruit daily, and given four ounces of Enfamil every two hours. N.H. weighed 2,608[2] grams at birth and 3,220 grams four months later when admitted to the hospital.

---

[2] The transcript refers to the weight as "26.08" grams. The testimony at trial established

Further, the treating doctors found no medical explanations for the malnourishment. N.H. gained weight while on the hospital feeding regiment: 315 grams in ten days, or approximately half the weight she gained over the preceding four months.

{¶ 5} Dr. Lolita McDavid, the medical director of child advocacy and protection at University Hospitals, oversaw the hospital's review of suspected child abuse cases, including N.H.'s case. Dr. McDavid stated that the amount of food claimed to have been given to N.H. would not have resulted in the failure-to-thrive diagnosis nor in N.H.'s emaciated condition, which was readily identifiable by a lay person. The pictures introduced at trial reflected little to no fat on the baby's body, and her ribs were visible.

{¶ 6} On January 6, 2009, Clopton was indicted in Cuyahoga County Common Pleas Court Case No. CR-519602 on one count of felonious assault in violation of R.C. 2903.11, two counts of child endangering in violation of R.C. 2919.22, and one count of domestic violence in violation of R.C. 2929.25; all counts named N.H. as the victim. On February 10, 2009, Clopton was again indicted in Cuyahoga County Common Pleas Court Case No. CR-520865 on one count of felonious assault in violation of R.C. 2903.11, and one count of child endangering in violation of R.C. 2919.22; both counts named V.H. as the victim.

that 26.08 grams is equal to five pounds, twelve ounces. We note that 2,608 grams equals approximately five pounds, twelve ounces and believe this discrepancy is only indicative of a transcription error.

**{¶ 7}** All cases proceeded to a jury trial. The jury found Clopton guilty of one count of endangering a child, her daughter N.H., in violation of R.C. 2919.22(A) in CR-519602 and not guilty on all remaining counts. The trial court reduced the verdict to judgment and sentenced Clopton to five years of incarceration. It is from this jury verdict and resulting sentence that Clopton timely appeals, raising four assignments of errors:

> "I. The trial court erred in denying appellant's Criminal Rule 29 motion for acquittal when there was insufficient evidence to prove the elements of child endangering. (Transcript generally)."

> "II. The appellant's conviction for child endangering was against the manifest weight of the evidence. (Transcript generally)."

> "III. The trial court erred by allowing prejudicial joinder of the trials of appellant and Maurice Hockett. (Tr. 7-23)."

> "IV. The language of the indictment and jury charge regarding count two was defective in that it was missing an element of the crime charged. (Transcript generally)."

**{¶ 8}** We will address Clopton's first and second assignments of error together, then the fourth as they all deal with a violation of R.C. 2919.22(A), before addressing the third assignment of error dealing with severance of trials.

**{¶ 9}** In reviewing a claim of insufficient evidence, "'the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks* (1991), 61 Ohio

St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37.

{¶ 10} In reviewing a claim challenging the manifest weight of the evidence, the question to be answered is whether "there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt. In conducting this review, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." (Internal citations and quotations omitted.) *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229.

{¶ 11} Clopton was convicted of a violation of R.C. 2919.22(A), which in pertinent part provides that "[n]o person, who is the parent * * * of a child under eighteen years of age * * * shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support." A "substantial risk" is defined in R.C. 2901.01(A)(8) as "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." A violation of this section is a felony of the third degree if the child suffers serious physical harm. R.C. 2919.22(E)(2)(c). "Serious physical harm" means any of the following:

"(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;

"(b) Any physical harm that carries a substantial risk of death;

"(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

"(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement.

"(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain."

R.C. 2901.01(A)(5).

{¶ 12} "Serious physical harm" may involve injuries where the condition is of such gravity as would normally require hospitalization. *State v. Sledge*, Cuyahoga App. No. 83093, 2004-Ohio-2157, ¶ 17; *State v. Smith* (May 27, 1993), Cuyahoga App. No. 62399, *7; *State v. Snyder*, Cuyahoga App. No. 94755, 2011-Ohio-1062 (reversing conviction for felony child endangerment by distinguishing hospital examinations from treatment); *State v. Sharp*, Butler App. No. CA2009-09-236, 2010-Ohio-3470; *State v. Jones*, Summit App. No. 22545, 2005-Ohio-5502. It may also involve physical injuries that permanently or temporarily disfigure the victim or carry a substantial risk of death.  R.C. 2901.01(A)(5)(b) and (d). Finally, serious physical harm can be shown by evidence that establishes that the injury led to permanent incapacity, temporary substantial incapacity, acute pain of such duration as to result in substantial suffering, or any harm that results in prolonged pain. R.C. 2901.01(A)(5)(c) and (e); *State v. Loparo*, Cuyahoga App. No. 88229, 2007-Ohio-2783, ¶ 13.

{¶ 13} We acknowledge that as recently as *State v. Littlejohn*, Cuyahoga App. No. 95380, 2011-Ohio-2035, this court has maintained the proposition that "where injuries to the victim are serious enough to cause him or her to *seek medical treatment*, a jury many reasonably infer that the force exerted on the victim caused serious physical harm as defined by R.C. 2901.01(A)(5)." (Emphasis added.) Id. at ¶ 21; citing *State v. Walker* (June 18, 1987), Cuyahoga App. No. 52391; cf. *State v. Blaine*, Cuyahoga App. No. 85113, 2005-Ohio-3831 (noting that "a victim's decision (or financial ability) to seek medical treatment should not be viewed as solely dispositive of the issue of serious physical harm"). This standard has permeated this district's interpretation of R.C. 2901.01(A)(5). However, it is important to note that the line of cases culminating with *Littlejohn* originated with *State v. Griffin* (June 14, 1979), Cuyahoga App. No. 39036.

{¶ 14} In *Griffin,* the court affirmed the trial court's inclusion of a simple assault jury instruction for a felonious assault charge and found that the lesser included offense instruction was proper considering the fact that the victim never sought medical attention for his injuries. The jury could reasonably infer from the lack of treatment that the injury was not serious. Id. The *Griffin* case does not stand for the proposition that seeking medical treatment alone substantiates an inference that the victim suffered serious physical harm. The inference derived from a victim seeking medical treatment is a proper factor to consider, not a dispositive one.

{¶ 15} It is important to briefly note that every case from *Griffin* to *Littlejohn* includes facts that establish one of the factors in R.C. 2901.01(A)(5)(a)-(e), such as, prolonged or acute pain, or some form of incapacity. E.g., *Littlejohn*, 2011-Ohio-2035, ¶ 22-24 (noting the facts establish that one victim suffered blurred vision and headaches long after the assault and another underwent physical therapy to rehabilitate full use of his hand); *State v. Davis*, Cuyahoga App. No. 81170, 2002-Ohio-7068, ¶ 21 (noting that the victim suffered fits of vomiting the evening of the assault and experienced headaches for several days after); *State v. Wilson* (Sept. 21, 2000), Cuyahoga App. No. 77115 (noting the fact that the victim's eye remained sensitive to touch for six months and she may have permanent issues with the retina as a result of the assault); *State v. Williams* (Nov. 10, 1983), Cuyahoga App. No. 46599 (relying on the testimony that the victim was too weak to go to the police station to make a complaint as sufficient evidence that she substantially suffered or was temporarily incapacitated). We have also relied on the fact that a victim received treatment, by needing stitches, sutures, or staples to close the wound, to establish a serious injury. See *State v. Rogers*, Cuyahoga App. No. 91380, 2009-Ohio-2252; *State v. Sellers*, Cuyahoga App. No. 91043, 2009-Ohio-485; *State v. Smith*, Cuyahoga App. No. 90476, 2008-Ohio-5985; *State v. Gary* (May 9, 1996), Cuyahoga App. No. 69532.

{¶ 16} The history of the case law coupled with the fact that subsequent cases do not solely rely on the proposition as stated — that a jury may infer a serious physical harm from

the fact that the victim sought medical treatment — compels the conclusion that the inference alone is not dispositive. This district has not affirmed a conviction based on a fact pattern where the victim seeking medical treatment is the only evidence establishing the serious physical harm. Quite the opposite, in *State v. Ivey* (1994), 98 Ohio App.3d 249, 257, 648 N.E.2d 519, we held that the fact the victim was examined, released without medication, and needed no further actions to ensure proper healing compelled the reversal of a conviction on the basis there was insufficient evidence to establish a serious physical harm.

{¶ 17} In this case, Clopton claims there is no evidence she caused the brain or wrist trauma, or establishing that the failure-to-thrive diagnosis was life threatening to substantiate the finding of a serious physical harm. We find some merit to Clopton's first argument, but not the latter. The record may not adequately establish a direct link between the brain and wrist injuries and Clopton, but we need not address that argument. The state was not limited to the brain and wrist injuries in order to establish a violation of R.C. 2919.22(A); nor was the state required to prove the failure to thrive was life threatening, as Clopton argues. To establish a felony violation of R.C. 2919.22(A), the state need only prove beyond a reasonable doubt that Clopton created a substantial risk of harm by failing to care for the child and that risk caused the child to suffer serious physical harm.

{¶ 18} Starting with the sufficiency of the evidence assignment of error, when viewing the trial evidence in a light more favorable to the prosecution, a rational trier of fact could find the essential elements of the crime proven beyond a reasonable doubt.

{¶ 19} Clopton was aware that doctors were concerned with N.H.'s weight and still avoided regular checkups on at least three occasions. N.H. saw a doctor only after CCDCFS offered Clopton child care vouchers and she was already at the hospital visiting V.H. The emergency room staff examined N.H. and determined it necessary to immediately admit and treat her for failure to thrive. N.H. thus required hospitalization for a condition that, according to Dr. McDavid's testimony, should have been readily apparent to anyone.

{¶ 20} Upon being admitted, N.H. gained weight at the expected rate — in ten days gaining almost half the weight gained in the preceding four months. Dr. McDavid established that N.H. would not have been malnourished if she received the amount of food Clopton claimed to be feeding her, especially in light of the fact there were no organic causes for the malnourishment and N.H. gained weight as expected upon admission. Clopton, N.H.'s mother, created a substantial risk to the health of N.H. by failing to care for, protect, and support N.H. by allowing N.H. to become so malnourished as to require hospitalization.

{¶ 21} There is sufficient evidence establishing the malnourishment. The question becomes whether the failure-to-thrive diagnosis and subsequent hospital admission satisfies the elements of endangering a child to support a felony conviction. The emergency room

doctors determined that N.H. required immediate admission based on the failure-to-thrive diagnosis, and that condition was a result of not being properly fed. The doctors treated N.H. for over a week. Because of this diagnosis and treatment, coupled with the evidence that Clopton failed to ensure N.H. was monitored by doctors for her low birth weight prior to being induced to take N.H. to the emergency room, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

{¶ 22} In reviewing that same evidence from the entire record under the manifest weight of evidence standard, we find that based on the substantial evidence presented at trial, the jury could find beyond a reasonable doubt that the state proved every element of the crime of endangering and causing serious physical harm to the child.

{¶ 23} Again, we agree with Clopton that there may have been issues with the wrist and brain traumas as they relate to her conviction, but the jury heard evidence on the failure-to-thrive diagnosis as well. The record does not indicate which injury Clopton was convicted on. The evidence of the circumstances surrounding the malnourishment, in and of itself, was enough to sustain the conviction.

{¶ 24} In addition to the above-noted evidence, a defense witness testified on N.H.'s emaciated appearance and Clopton's parental prowess. That testimony came from Clopton's friend and coworker. Clopton worked at a daycare center. Clopton's friend testified that she did not think N.H.'s condition warranted immediate medical attention based on her

observations, and that Clopton was a good mother. The state noted in cross-examination that Clopton's friend had a duty to report suspected child abuse to the authorities and failure to report could negatively affect her ability to work. In hearing all the testimony, the jury was free to deem Dr. McDavid's testimony, that it should have been apparent to anyone that N.H. was malnourished, more credible.

{¶ 25} Relying on the evidence presented at trial, the jury did not lose its way in finding Clopton guilty of endangering and causing serious physical harm to the child in violation of R.C. 2919.22(A). Clopton's first and second assignments of error are overruled.

{¶ 26} Turning to Clopton's fourth assignment of error, Clopton claims the indictment failed to include the allegation that Clopton was a parent of the child being endangered. The statute requires the offender to be a parent, guardian, custodian, person having custody or control, or person in loco parentis of a child. R.C. 2919.22(A).

{¶ 27} An indictment will not be invalidated "[f]or other defects or imperfections which do not tend to prejudice the substantial rights of the defendant upon the merits." R.C. 2941.08(K). An indictment serves several purposes. "First, by identifying and defining the offenses of which the individual is accused, the indictment serves to protect the individual from future prosecutions for the same offense. In addition, the indictment compels the government to aver all material facts constituting the essential elements of an offense, thus

affording the accused adequate notice and an opportunity to defend." *State v. Childs*, 88 Ohio St.3d 194, 198, 2000-Ohio-198, 724 N.E.2d 781.

**{¶ 28}** It was not necessary to put Clopton on notice that she had to be the parent of N.H. as an element of the endangering a child crime. She was the parent and admitted as much to CCDCFS employees and to the medical staff of the hospital handling N.H.'s case. The imperfection in this indictment did not prejudice any substantial rights of Clopton. She could not have defended the case on the grounds that she did not fit into any of the relationships enumerated in R.C. 2919.22(A). At trial, it was undisputed she was N.H.'s mother. Clopton's fourth assignment of error is overruled.

**{¶ 29}** Clopton's final assignment of error, Assignment of Error No. III, attacks the trial court's decision to join cases CR-518448, CR-519602, and CR-520865 together for trial. In CR-518448, Hockett was charged with various crimes stemming from an incident at the hospital where Hockett attempted to forcibly remove N.H. from hospital care. Clopton and Hockett were codefendants in CR-519602 with the victim being N.H. and CR-520685 with the victim being V.H. Clopton requested to separate her trial from Hockett's. Clopton argues that Hockett's behavior was disturbing and that his hostile defiance of the hospital and CCDCFS employees prejudiced her defense. Clopton also claims that it was Hockett who prevented CCDCFS employees from completing home visits and N.H. from getting medical attention. Clopton's third assignment of error is not well taken.

{¶ 30} Pursuant to Crim.R. 8(A) and 13, two or more offenses can be tried together if they are of similar character, based on connected transactions, or part of a course of conduct or common scheme. Ohio law favors joining multiple offenses in a single trial if the offenses charged are of the same or similar character. *State v. Lott* (1990), 51 Ohio St.3d 160, 163, 555 N.E.2d 293. In order to demonstrate a trial court erred in denying severance, a defendant must establish that (1) her rights were prejudiced, (2) she provided the trial court with sufficient information to demonstrate prejudice, and (3) the court abused its discretion in refusing to separate the charges for trial. *State v. Schaim* (1992), 65 Ohio St.3d 51, 59, 600 N.E.2d 661.

{¶ 31} Clopton's only argument to the trial court was that the charges against her relating to both her children served only to "pile on" charges at one trial. The trial court focused on the chain of events that led to the charges in the individual cases: while V.H. was in the hospital being treated for the alleged abuse in CR-520685, CCDCFS encouraged Clopton to take N.H. for an examination, which led to the charges in CR-519602; while N.H. was in the hospital being treated for the alleged abuse, Hockett's actions in attempting to remove her led to the indictment in CR-518442. The trial court also noted that the witnesses in each case, one being from out of town, were the same.

{¶ 32} Such interweaving of issues and the judicial economy of one trial outweighed any prejudice to Clopton from presenting multiple charges to the jury. Any defendant will be

prejudiced to some degree when multiple offenses are joined in a single trial. Clopton did not provide the trial court with sufficient information to overcome the judicial economy of joinder in her specific case. Nor did she raise with the trial court the issue of any potential prejudice from Hockett's hostile behavior. We cannot say the trial court abused its discretion in denying severance based on the information and arguments made prior to trial. Clopton's third assignment of error is overruled.

Judgment affirmed, and case remanded.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


SEAN C. GALLAGHER, JUDGE

MELODY J. STEWART, P.J., and
KENNETH A. ROCCO, J., CONCUR