[Cite as *State v. Battles*, 2021-Ohio-310.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | No. 109265 |
| v. | : | |
| LA'SHA BATTLES, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 4, 2021

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-18-634883-A

***Appearances:***

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Ashley Gilkerson, Assistant Prosecuting Attorney, *for appellee.*

Paul W. Flowers Co., L.P.A., and Louis E. Grube, *for appellant.*

SEAN C. GALLAGHER, P.J.:

{¶ 1} Defendant-appellant La'Sha Battles ("Battles") appeals her conviction for felonious assault and aggravated menacing. Upon review, we affirm.

**Background**

{¶ 2} On December 7, 2018, Battles was indicted for felonious assault in violation of R.C. 2903.11(A)(1), a felony of the second degree, and aggravated menacing in violation of R.C. 2903.21(A), a misdemeanor of the first degree. The charges arose from events occurring on or about June 24, 2017, during which Battles was alleged to have "knowingly caused serious physical harm to [the victim]" and to have "knowingly [caused the victim] to believe that [Battles would] cause serious physical harm to [the victim] or the property of [the victim]." Battles entered a plea of not guilty, and following discovery, the case proceeded to a jury trial.

{¶ 3} The testimony revealed that on the date of the incident, Battles was attempting to cash a check at a liquor store. The victim, who was the cashier and the store manager, doubted the validity of the check. After some discussion, the victim informed Battles that he could not cash the check. Battles took the check back, cursed at the victim, and struck the victim in the face with a pen, which left a mark under the victim's left eye.

{¶ 4} Next, Battles began to run out of the store, the victim gave chase, Battles fell, and the two engaged in a scuffle, during which Battles shouted "I will show you," cursed at the victim, and kicked him with her leg. The victim testified that Battles then threatened "I will send my men to finish with you" and left the scene.

{¶ 5} Five to seven minutes later, Battles's brother and another man in a blue hoodie entered the store. The victim tried to explain what happened and

showed the men the video footage of his encounter with Battles. As this was occurring, the man in the blue hoodie punched the victim in his face, the victim fell and hit his head on a shelf, and the victim blacked out and lost consciousness. When the victim regained consciousness, he was on the floor, his head and mouth were hurting, and he could not stand up. His coworkers helped him off the ground and onto a chair. He testified that he was "totally out of balance" and almost fell off the chair. The incident was captured on surveillance video, and the video was played at trial.

{¶ 6} The victim did not call the police or seek medical attention right away, and he finished working his shift. When a police officer entered the store, the victim explained what happened and the officer instructed him to make a medical report. The victim explained he did not understand how he could do that because he did not have medical insurance and was relatively new to the United States.

{¶ 7} The victim went to the hospital two days after the incident. The victim reported to the nurses that he was experiencing issues with balance and had a headache. The victim was diagnosed with a concussion and received discharge instructions. The victim testified that he was unable to drive for about eight to nine months, that he constantly had a light headache, and that he continued to have issues with balance and vision. He testified that he continued to work because he has a low income, and that he did not seek follow-up medical care because he did not have medical insurance.

{¶ 8} At the time of trial, the victim testified that his vision was still impacted, that he has a continuous light headache, and that if he moves quickly from side to side he loses his balance. The victim also pointed to a residual mark under his left eye where he was struck by the pen. The victim testified that Battles came back to the store two months after the incident occurred and told him "you didn't learn."

{¶ 9} The state proceeded against Battles on a theory of complicity on Count 1 for felonious assault. The jury returned a verdict of guilty on both counts. The trial court sentenced Battles to one and one-half years of community control on each count and advised Battles of the three years of mandatory postrelease control. The court ordered no contact with the victim and stated a violation could result in more restrictive sanctions or a prison term of two years. The court also ordered Battles to perform 50 hours of community service. Battles timely filed this appeal.

{¶ 10} While this appeal was pending, Battles's probation was terminated. However, the appeal is not moot and Battles need not present evidence that she will suffer some collateral disability. *See State v. Golston*, 71 Ohio St.3d 224, 227, 643 N.E.2d 109 (1994). As the Supreme Court of Ohio has recognized, "[t]he collateral legal consequences associated with a felony conviction are severe and obvious." *Id.*

**Law and Analysis**

{¶ 11} Battles raises three assignments of error for our review. Under her first assignment of error, Battles claims the trial court erred by failing to grant her motion for judgment of acquittal for the offense of felonious assault.

{¶ 12} A Crim.R. 29 motion for judgment of acquittal is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence. *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. A challenge to the sufficiency of the evidence presents a question of law. *See State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶ 13} Battles was found guilty of felonious assault in violation of R.C. 2903.11(A)(1) under a complicity theory. For felonious assault, R.C. 2903.11(A)(1) provides that "[n]o person shall knowingly * * * [c]ause serious physical harm to another * * *[.]" R.C. 2901.01(A)(5) defines "serious physical harm to persons" to include "(c) [a]ny physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity," and "(e) [a]ny physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain."

{¶ 14} Battles argues that the evidence at trial was not sufficient to sustain the jury's finding that the victim suffered serious physical harm when he was assaulted by the man in the blue hoodie. Battles maintains that the mild concussion and physical symptoms experienced by the victim do not constitute serious physical harm and references selective evidence in the case. She states that the victim did not seek immediate medical attention and that evidence in the record demonstrates the victim was "well" and in "stable condition," he was able to leave the hospital within mere hours, he was given over-the-counter medication, and he did not miss any work. However, upon our review of the entire record in this case, we find the state presented sufficient evidence to prove serious physical harm.

{¶ 15} The testimony and evidence showed that after the victim informed Battles he could not cash her check, Battles struck the victim in the face with a pen, cursed at the victim, and threatened the victim, stating she would "send my men to finish with you." Within minutes, two men entered the store. While the victim was trying to clear up the matter by showing them the surveillance video, one of the men punched the victim in the face. The victim blacked out and lost consciousness; he was unable to get off the floor without assistance and was "totally out of balance"; he went to the hospital two days later; and he was diagnosed with a concussion. He testified that he experienced headaches and issues with balance; that he was unable to drive for eight or nine months; and that he was still having issues with headaches, eyesight, and balance at the time of trial.

**{¶ 16}** In *State v. Clopton*, 8th Dist. Cuyahoga No. 95297, 2011-Ohio-2392, this court recognized that seeking medical treatment alone is not dispositive of serious physical harm. *Id.* at ¶ 16. Although "serious physical harm" may involve an injury or condition of such gravity as would normally require hospitalization, the facts must establish one of the factors in R.C. 2901.01(A)(5)(a)-(e), such as permanent incapacity, temporary substantial incapacity, acute pain of such duration as to result in substantial suffering, or any harm that results in prolonged pain. *Id.* at ¶ 12-14, citing R.C. 2901.01(A)(5)(c) and (e).

**{¶ 17}** Sufficient evidence of serious physical harm has been found under circumstances where the victim was knocked temporarily unconscious, the victim's injuries were serious enough to cause the victim to seek medical treatment, and the victim suffered from persistent pain for months. *See State v. Redman*, 3d Dist. Allen No. 1-15-54, 2016-Ohio-860, ¶ 25-28. In *State v. Davis*, 8th Dist. Cuyahoga No. 81170, 2002-Ohio-7068, this court found the state presented sufficient evidence of serious physical harm where the victim suffered multiple punches and kicks to his head and face, his head hit a steel post, he suffered a concussion as well as scrapes and cuts, he sought medical treatment and remained at the hospital for several hours, and he had fits of vomiting and experienced headaches for several days. *Id.* at ¶ 6-8 and ¶ 22-23; *see also State v. Rogers*, 8th Dist. Cuyahoga No. 105879, 2018-Ohio-3495, ¶ 41-46 (finding sufficient evidence of serious physical harm where the victim sustained a concussion, headaches, and head trauma as a result of a blow to his head, and the victim testified that he received medical treatment for his injuries);

*In re E.B.*, 3d Dist. Auglaize No. 2-17-21, 2018-Ohio-1683, ¶ 22-23 (finding sufficient evidence of serious physical harm where the victim suffered prolonged periorbital pain and headaches, as well as a concussion); *State v. Littlejohn*, 8th Dist. Cuyahoga No. 95380, 2011-Ohio-2035, ¶ 22-23 (finding sufficient evidence of serious physical harm where a victim, who was punched and kicked by the defendant, became disoriented and experienced blurred vision, sought medical treatment, and suffered prolonged headaches).

{¶ 18} Although Battles argues that the victim in this case did not seek immediate medical attention, as determined by the First District Court of Appeals, "the fact that the victim does not seek medical treatment after an assault does not preclude a finding that the victim suffered serious physical harm." *Ohio v. Craig*, 1st Dist. Hamilton No. C-160816, 2020-Ohio-3103, ¶ 30 (finding the state presented sufficient evidence of serious physical harm where the victim was "knocked out" after being repeatedly head-butted, suffered a temporary loss of consciousness, and had a knot on her forehead that lasted for months); *see also State v. Simpson*, 8th Dist. Cuyahoga No. 107407, 2019-Ohio-2912 (finding sufficient evidence of serious physical harm where the victim, who did not seek immediate medical attention, had sustained a minor concussion, a minor neck sprain, and a back contusion).

{¶ 19} We also decline to draw a distinction in this matter as advocated by Battles.[1] As this court has recognized, the degree of harm that constitutes "serious"

---

[1] We do not find persuasive Battles's arguments pertaining to *Rogers* and *State v. Wyland,* 8th Dist. Cuyahoga No. 94463, 2011-Ohio-455. Neither case is inconsistent with the decision rendered herein.

physical harm is not an exact science. *State v. Mason*, 8th Dist. Cuyahoga No. 109176, 2020-Ohio-4998, ¶ 11, citing *State v. Montgomery*, 8th Dist. Cuyahoga No. 102043, 2015-Ohio-2158, ¶ 11. The testimony and evidence in each case must be considered to determine whether sufficient evidence exists.

{¶ 20} The state was required to prove beyond a reasonable doubt that Battles knowingly caused serious physical harm to another as that term is statutorily defined. Included in the statutory definition of "serious physical harm" is any physical harm that involves "some temporary, substantial incapacity," R.C. 2901.01(A)(5)(c), or that involves "acute pain of such duration [that results] in substantial suffering or that involves any degree of prolonged * * * pain." R.C. 2901.01(A)(5)(e). The Supreme Court of Ohio has determined that R.C. 2901.01(A)(5)(e) provides "a precisely worded definition of 'serious physical harm to persons' * * *." *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, ¶ 239.

{¶ 21} Upon our review, we find that the state presented sufficient evidence to prove that the victim suffered serious physical harm. Moreover, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of felonious assault proven beyond a reasonable doubt. We also find sufficient evidence was presented from which the jury could infer Battles was complicit in the felonious assault. The first assignment of error is overruled.

{¶ 22} Under her second assignment of error, Battles claims the verdict is against the manifest weight of the evidence on both counts. When reviewing a claim challenging the manifest weight of the evidence, the court, reviewing the entire record, must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). When a court of appeals concludes that a verdict is against the weight of the evidence, "the appellate court sits as the 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Id.* at 388. "An appellate court's disagreement with the jurors' weighing of the evidence does not require the special deference accorded verdicts of acquittal." *Id.* A judgment of conviction should be reversed as against the manifest weight of the evidence only in the exceptional case in which the evidence weighs heavily against the conviction. *Id.* at 387, citing *Martin* at 175.

{¶ 23} First, Battles claims that the weight of the evidence proves that the victim did not suffer "serious" physical harm and that the victim's conduct in waiting to seek any medical testing, his treatment with over-the-counter medication, and his discharge papers reflect that the degree of his injuries was not serious within the meaning of R.C. 2901.01(A)(5). Our review of the entire record in this case reflects evidence establishing serious physical harm. After being punched, the victim

blacked out and was unconscious.  The victim testified that he experienced headaches and a loss of balance.  He went to the hospital and was diagnosed with a concussion.  He further testified that he was unable to drive for months and that he was still experiencing symptoms at the time of trial.  This evidence demonstrates that the victim suffered serious physical harm under R.C. 2901.01(A)(5)(c) and/or (e), and we do not find the conviction for felonious assault to be against the manifest weight of the evidence.

{¶ 24} Second, Battles claims her conviction for complicity in the crime of felonious assault is against the manifest weight of the evidence.  Battles argues the evidence suggests she was only angry with the victim when she left the store, she did not share the criminal intent of the principal offender, and the principal offender formed his intent while she was not present.  In support of her argument, Battles states the man in the blue hoodie did not assault the victim immediately upon entering the store, the encounter started as a discussion, and the man did not act to harm the victim until he saw the surveillance video.  "[An] accomplice's criminal intent may be inferred, by direct or circumstantial evidence, and from the presence, companionship, and conduct of the accomplice both before and after the offense is committed."  *State v. Shropshire*, 8th Dist. Cuyahoga No. 85063, 2005-Ohio-3588, ¶ 15, citing *State v. Nievas*, 121 Ohio App.3d 451, 456-457, 700 N.E.2d 339 (8th Dist.1997).  Our review of the entire record reflects the jury heard evidence that Battles struck the victim with a pen, cursed at the victim, kicked at the victim, and threatened, "Okay, I will show you.  I will send my men to finish with you."  Within

minutes, the appellant's brother and the other man entered the store. The victim was struck while he was showing the surveillance video. The victim testified that a couple of months after the incident, Battles came back to the store and said to him "you didn't learn." Upon this evidence, the jury could infer that the men entered the store with the criminal intent to "knowingly" cause serious physical harm to the victim and that Battles shared the criminal intent.

{¶ 25} Third, Battles claims the state failed to prove the crime of aggravated menacing under R.C. 2903.21(A), which provides: "No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or the property of the other person * * *." Pursuant to R.C. 2901.22(B), "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." Although the state is not required to show that the offender intended to carry out the threat to prove aggravated menacing, the state is required to show that the victim had a subjective belief of serious physical harm, which can be proven with circumstantial evidence. *State v. Clemmons*, 12th Dist. Butler No. CA2020-01-004, 2020-Ohio-5394, ¶ 33, citing *State v. Landrum*, 1st Dist. Hamilton No. C-150718, 2016-Ohio-5666, ¶ 9.

{¶ 26} We recognize that the offense of aggravated menacing was alleged to have occurred on or about June 24, 2017, which is the date the victim refused to cash the check for Battles. Battles claims that the victim did not believe she would "cause serious physical harm" to him and did not take the threat seriously. She points to

evidence showing the victim chased her out of his store, did not call the police, and returned to work. We are not persuaded by this argument. Our review shows that at the time of the threat, Battles had already struck the victim in the face with a pen, cursed at the victim, and kicked at the victim. The victim testified that Battles threatened that she would send her men to "finish" with him as she left the scene. Within minutes, two men associated with the victim entered the store. The victim attempted to explain what happened and to defend himself by showing the men the video footage of the encounter with Battles. When the surrounding circumstances are considered, the record supports a determination that Battles knowingly threatened to cause serious physical harm to the victim. Also, it can be reasonably inferred from the circumstances that the victim took the threat seriously, was concerned for his safety, and believed Battles would cause him serious physical harm. There is no indication in the case before us that the jury lost its way, and we do not find the conviction for aggravated menacing to be against the manifest weight of the evidence.

{¶ 27} The second assignment of error is overruled.

{¶ 28} Under her third assignment of error, Battles claims the trial court committed plain error and confused the jury by giving an incorrect and misleading jury instruction on the definition of complicity by including a conspiracy instruction.

{¶ 29} R.C. 2923.03(A), complicity, provides:

No person, acting with the kind or culpability required for the commission of an offense shall do any of the following:

(1) Solicit or procure another to commit the offense;

(2) Aid or abet another in committing the offense;

(3) Conspire with another to commit the offense in violation of section 2923.01 of the Revised Code;

(4) Cause an innocent or irresponsible person to commit the offense.

{¶ 30} Because felonious assault in violation of R.C. 2903.11(A)(1) is not among the crimes enumerated in the conspiracy statute, R.C. 2923.01(A), Battles argues it was plain error to give an instruction on conspiracy. The jury instructions provided by the trial court provided in part:

> Complicity. The State of Ohio has presented a theory that the defendant acted in complicity with a principal offender in the commission of the felonious assault. A person who is complicit with another in the commission of a criminal offense is regarded as guilty as if she personally performed every act constituting the offense. This is true even if she did not personally perform every act constituting the offense or was not physically present at the time the offense was committed.

> Before you can find the defendant guilty of complicity in the commission of a felonious assault, you must find beyond a reasonable doubt that * * * the defendant solicited or procured another to commit the offense of felonious assault, or aided or abetted another in committing the offense of felonious assault, or conspired with another to commit the offense of felonious assault.

{¶ 31} The instructions proceeded to define "solicit," "procure," "aided or abetted," and "conspiracy." Battles made no objection to these jury instructions or to the inclusion of the instruction on conspiracy. "When a defendant fails to object to the jury instructions, she waives all but plain error." *State v. Owens*, Slip Opinion

No. 2020-Ohio-4616, ¶ 7, citing *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶ 127.

{¶ 32} Under Crim.R. 52(B), "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." The Supreme Court of Ohio has recognized that a "plain error" is "'an obvious defect in the trial proceedings,'" and that to qualify as "plain error," the defect "'must have affected "substantial rights,"'" which has been interpreted to mean that the error "'must have affected the outcome of the trial.'" *State v. Kirkland*, 160 Ohio St.3d 389, 2020-Ohio-4079, 157 N.E.3d 716, ¶ 72, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240; *see also State v. Hundley*, Slip Opinion No. 2020-Ohio-3775, ¶ 116.[2] Further, "a defendant must 'demonstrate a reasonable *probability* that the error resulted in prejudice.'" *Kirkland* at ¶ 72, quoting *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22.

{¶ 33} We find that even if there was error in providing the instruction, it did not affect the substantial rights of Battles. Although the state concedes the conspiracy instruction does not apply in this case, it argues that the jury could have found Battles complicit in the felonious assault under other theories of complicity. A jury instruction is not to be judged in artificial isolation but must be viewed in the context of the overall charge. *See State v. Price*, 60 Ohio St.2d 136, 398 N.E.2d 772

---

[2] We note that Battles takes issue with whether *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), continues to be good law in Ohio. We need not make that determination and apply the standard of plain error as recently pronounced by the Supreme Court of Ohio.

(1979), paragraph four of the syllabus. In this case, the definition of conspiracy was read to the jury as part of the overall instruction on complicity, which encompasses several different theories, and the trial court also instructed the jury on the actual charge in the indictment for felonious assault. Under the facts presented at trial, it cannot be said that including the instruction on conspiracy affected the outcome of the case. Further, Battles has not demonstrated any reasonable probability that including the conspiracy language confused the jury or that this formed the basis of the jury's decision on complicity. Accordingly, reversal is not warranted under the plain error standard of review. *See Shropshire*, 8th Dist. Cuyahoga No. 85063, 2005-Ohio-3588, at ¶ 27-31. The third assignment of error is overruled.

{¶ 34} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27

of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, PRESIDING JUDGE

ANITA LASTER MAYS, J., and
EILEEN T. GALLAGHER, J., CONCUR