[Cite as *State v. Tomic*, 2024-Ohio-5537.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Andrew J. King, J. |
| -vs- | : | |
| | : | Case No. 2023CA00150 |
| | : | |
| TYLER T. TOMIC | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:          Appeal from the Stark County Court of
                                 Common Pleas, Case No. 2022CR2185

JUDGMENT:                        AFFIRMED

DATE OF JUDGMENT ENTRY:          November 22, 2024

APPEARANCES:

For Plaintiff-Appellee:                    For Defendant-Appellant:

KYLE L. STONE                              GEORGE URBAN
STARK CO. PROSECUTOR                       116 Cleveland Ave. NW
LISA A. NEMES                              Suite 808
110 Central Plaza South, Ste. 510          Canton, OH 44702
Canton, OH 44702-1413

*Delaney, P.J.*

{¶1} Appellant Tyler T. Tomic appeals from the October 13, 2023 Judgment Entry of conviction and sentence of the Stark County Court of Common Pleas. Appellee is the state of Ohio.

## FACTS AND PROCEDURAL HISTORY

{¶2} This case arose on March 10, 2022, when appellant drove at a high rate of speed, lost control of the vehicle, and crashed. Although appellant was able to walk away from the crash, his companion M.I. was trapped beneath the vehicle and died as a result of his injuries.

{¶3} Appellant's evening began at the "Old Timer's Bar" in Massillon, events appellee illustrated with testimony and video of appellant drinking inside the bar. Appellant arrived at the bar with his mother around 6:08 p.m.; he parked his vehicle, a white Mercedes SUV, along the curb. Video from inside the bar clearly depicted appellant drink at least three beers and three shots, including tequila shots, between 6:14 p.m. and when he left the bar at 9:14 p.m. Video showed appellant drive off on 13th Street and his whereabouts for the next approximately 90 minutes are unaccounted for.

{¶4} Appellant next met a friend, M.I., at a gas station on Lake Avenue. M.I. purchased a Twisted Tea and returned to his own vehicle. Appellant and M.I. both drove off in their respective vehicles around 10:45 p.m. The two separately drove to a friend's house on Vogel Avenue, where M.I. left his truck and joined appellant in appellant's vehicle.

{¶5} Appellant drove north on Amherst Road through a residential area. Although the speed limit is 35 m.p.h., appellant was traveling approximately 86 m.p.h.

and lost control of the vehicle near a significant curve in the road at Ridgecrest Avenue. Appellant's vehicle left the roadway, traveled through several yards, struck a culvert and a telephone pole, and spun into a curb on Taggart Road. Upon striking the curb, the vehicle flipped and came to rest a few feet from a house, approximately 300 feet from where appellant first lost control. The crash occurred at approximately 10:52 p.m.

{¶6} Upon hearing what sounded like an explosion, a neighbor on Taggart came out of his house and found appellant's vehicle resting on its side in his neighbor's yard. He observed car parts spread across the roadway and heavy debris in the yard.

{¶7} The neighbor called 911 and as he was on the call, appellant ran down the sidewalk and approached him, visibly distraught. The neighbor couldn't understand what appellant was saying, but appellant hovered around the vehicle and the neighbor eventually understood there was someone else in the vehicle.

{¶8} M.I. was not found until Massillon police officers arrived on the scene and illuminated the area. M.I.'s torso and limbs were visible, but his head was under the crashed vehicle. An officer approached appellant and asked who was in the car. Appellant stated it was just the two of them and identified M.I. as his best friend. Appellant was not injured and initially claimed he was not driving the vehicle.

{¶9} Officers realized M.I. was gasping for breath and moved the vehicle off of his body. Although lifesaving measures were attempted, M.I. eventually succumbed to his injuries.

{¶10} In the meantime, appellant identified himself as the owner of the vehicle but claimed M.I. was driving. Appellant described events leading to the crash as though he was a passenger in the vehicle. As he continued to talk to police, however, he expressed

concern about M.I. and about consequences he faced, at one point asking whether "manslaughter" was a possibility and whether he would go home that night. Upon questioning, appellant replied he had "a few shots of Patron" that evening and had consumed "a nice amount of alcohol," although he maintained he wasn't driving.

{¶11} Examination of the vehicle at the crash scene revealed the driver's seatbelt was extended and locked into position, but the passenger seatbelt was tight. When a vehicle is involved in a crash, the seatbelt cannot extend or retract. The position of the seatbelts revealed to investigators that the driver was wearing a seatbelt and was not ejected from the vehicle at the time of the crash, but the passenger was not wearing a seatbelt and was therefore ejected from the vehicle. The inevitable conclusion of the evidence was that appellant was the belted driver and M.I. was the unbelted passenger.

{¶12} Further investigation at the scene revealed a small, clear plastic container which held cigarettes and marijuana.

{¶13} Police determined the crash occurred within Jackson Township and a Jackson officer, Ptl. Wiseman, arrived on the scene. Massillon officers told him M.I. had been transported to the hospital with what they believed were likely fatal injuries. Wiseman approached appellant to speak to him about the crash and observed multiple cuts on his hands and face, along with blood. Appellant said he wasn't sure when he sustained the injuries. A medic inquired whether appellant was intoxicated, and appellant again said he was drinking before the crash: three shots and four beers. Appellant continued to insist M.I. was the driver.

{¶14} Wiseman suspected appellant was under the influence of alcohol. He noted the odor of an alcoholic beverage upon his breath, glassy eyes, and slurred speech. Appellant's responses to the officer's questions were delayed.

{¶15} When medics examined appellant, there was visible bruising to his left shoulder, consistent with where the driver's-side seat belt would have been.

{¶16} Sgt. Sprowl arrived for the purpose of managing the scene and assigning tasks. As he approached the overturned vehicle, he smelled the odor of an alcoholic beverage. Inside the passenger compartment of the vehicle, he found a red solo cup and a can of Twisted Tea resting on the driver's-side door. Outside the moon roof, he found a cellophane baggie that appeared to contain cocaine. He observed the plastic container containing marijuana and cigarettes next to the vehicle. Another officer found a silver pill container key chain nearby. Sprowl photographed the scene and took measurements.

{¶17} Appellant was transported to the police department and presented with the BMV 2255 form typically used in O.V.I. arrests, advising a suspect of the consequences of consenting to or refusing breath, urine, or blood testing. Officer Wiseman read the document to appellant and signed it, but did not issue the document to appellant because charges were not being filed at that time due to the fatality.

{¶18} In the booking area, appellant asked Wiseman whether he would consent to testing if he was in appellant's position, but Wiseman declined to answer. While in the booking area, appellant made statements to himself or to someone on the phone that he was "whipping" the vehicle at the time of the crash, which officers took as an admission of driving. Appellant asked whether marijuana would show up in test results and indicated his concern about the potential result.

{¶19} At the crash scene, appellant had stated he would provide a chemical test, but at the station declined to do so. Appellant called his mother to discuss getting an attorney and afterward declined to perform field sobriety tests.

{¶20} Police released appellant that night and proceeded with further investigation of the crash.

{¶21} M.I.'s injuries proved fatal and his remains were transferred to the office of the Stark County Coroner, who observed extensive contusions and abrasions on M.I.'s body. The toxicology report indicated the presence of alcohol and cocaine in M.I.'s system. The level of cocaine was 868 nanograms per milliliter, a level which is quite high because a level of 900 nanograms per milliliter could cause death in some individuals. The coroner determined, however, that cocaine use was not the cause of M.I.'s death.

{¶22} M.I.'s death was deemed "accidental" with the coroner opining he was ejected during the crash but remained alive under the weight of the vehicle. The cause of death was a massive crush injury to M.I.'s head, chest, and abdomen with skeletal and visceral injury. The coroner's report also indicated ethanol and benzoylecgonine intoxication due to the toxicology results.

{¶23} In the meantime, the crash investigation continued with collection of evidence including the vehicle's data module, which indicated appellant was traveling at 86 m.p.h. approximately two and a half seconds before the recorded crash event. The driver's seatbelt was found to have a "friction burn" indicating the driver was belted at the time of the crash; the passenger seatbelt had no such mark.

{¶24} The investigation included steps to identify the driver because appellant claimed he was the passenger. D.N.A. on the driver's-side airbag excluded M.I. as the

source of the D.N.A.  A sample was obtained from appellant and his D.N.A. was found to be a consistent match with the driver's-side airbag profile.

{¶25} The crime lab also tested the suspected contraband found in the wreckage of the vehicle. The white powdered substance in the baggie was cocaine; the silver keychain compartment contained methamphetamine and oxycodone. The green vegetable matter found in the plastic container was determined to be marijuana.

{¶26} At the conclusion of the investigation of the crash, officers charged appellant, determining the driver's failure to control the vehicle caused the crash and the crash caused the death of M.I. Lt. Coppock determined the driver failed to control the vehicle and appellant was the driver, and separately determined the evidence showed appellant was intoxicated when he operated the vehicle. In reaching that conclusion, Coppock relied on the observations of officers at the crash scene and appellant's own statements.

{¶27} Appellant was charged by indictment with one count of aggravated vehicular homicide pursuant to R.C. 2903.06(A)(1)(a) and (B)(2)(a), a felony of the second degree [Count I]; one count of aggravated vehicular homicide pursuant to R.C. 2903.06(A)(2)(a) and (B)(3), a felony of the third degree [Count II]; one count of O.V.I. pursuant to R.C. 4511.19(A)(2)(a) and (b), a misdemeanor of the first degree [Count III]; and one count of possession of marijuana pursuant to R.C. 2925.11(A)(C)(3)(a), a minor misdemeanor.

{¶28} Appellant entered pleas of not guilty and the matter proceeded to trial by jury. Appellant was found guilty as charged upon Counts I and II, and not guilty upon Counts III and IV.  The trial court imposed a prison term of 5 to 7½ years.

{¶29} Appellant now appeals from the judgment entry of his convictions and sentence.

{¶30} Appellant raises three assignments of error:

**ASSIGNMENTS OF ERROR**

{¶31} "I. APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

{¶32} "II. THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO PRESENT A JURY INSTRUCTION ON A LESSER INCLUDED (OR INFERIOR DEGREE) OFFENSE."

{¶33} "III. THE TRIAL COURT ERRED WHEN IT OVERRULED APPELLANT'S CRIMINAL RULE 29 MOTION FOR ACQUITTAL BECAUSE THE STATE FAILED TO PRODUCE SUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION AGAINST APPELLANT."

**ANALYSIS**

**I., III.**

{¶34} Appellant's first and third assignments of error are related and will be addressed together. He argues his convictions are not support by sufficient evidence and are against the manifest weight of the evidence, and that the trial court should have granted his Crim.R. 29(A) motion for acquittal. We disagree.

{¶35} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 1997-Ohio-52, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259 (1991) at paragraph two

of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶36} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, supra, 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶37} Appellant moved for acquittal pursuant to Crim.R. 29(A), which states a court "shall order the entry of the judgment of acquittal of one or more offenses * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." Because a Crim.R. 29 motion questions the sufficiency of the evidence, "[w]e apply the same standard of review to Crim.R. 29 motions as we use in reviewing the sufficiency of the evidence." *State v. Anderson*, 2024-Ohio-3181, ¶ 38 (5th Dist.). Whether the evidence is legally sufficient to sustain a verdict is a question of law. *Id.*, citing *State v. Thompkins*,

supra. "Sufficiency is a test of adequacy." *Id.* "We construe the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt." *Id.*, citing *State v. Jenks*, paragraph two of the syllabus.

{¶38} Appellant was found guilty upon one count of aggravated vehicular homicide pursuant to R.C. 2903.06(A)(1)(a), a felony of the second degree, and one count of aggravated vehicular homicide pursuant to R.C. 2903.06(A)(2)(a), a felony of the third degree. Those sections state the following:

> (A) No person, while operating or participating in the operation of a motor vehicle, motorcycle, utility vehicle, mini-truck, snowmobile, locomotive, watercraft, or aircraft, shall cause the death of another or the unlawful termination of another's pregnancy in any of the following ways:
>
> (1)(a) As the proximate result of committing a violation of division (A) of section 4511.19 of the Revised Code or of a substantially equivalent municipal ordinance;
>
> . . . .
>
> (2) In one of the following ways:
>
> (a) Recklessly;
>
> . . . .[.]

{¶39} Appellant asserts there is no evidence he was under the influence of drugs or alcohol at the time of the crash and points to alleged flaws in the analyses of Coppock

and the crash reconstruction.  Appellant further points to the level of cocaine metabolites in the victim's body and the coroner's conclusion that the victim's death was "accidental."

{¶40} One of appellant's expert witnesses, Henry Lipian, opined that Coppock could have taken additional technological steps in his analysis of what Lipian described as a "complex" crash. It was up to the factfinder to determine the weight to be given Lipian's testimony:

> Finally, we note the jury is not required to give any additional weight to the opinion of an expert, if any weight at all. Rather, an expert's opinion is admissible, as is any other testimony, to aid the trier of fact in arriving at a correct determination of the issues being litigated. Expert testimony is permitted to supplement the decision-making process of the "fact finder" not to supplant it. See *Ragon v. Vitali & Beltrami, Jr. Inc.*, [42 Ohio St.2d 161, (1975)]. Again, we stress that a jury is considered the primary fact-finder whose determinations must be afforded due deference upon appellate review.

*Doss v. Smith*, 1998 WL 338070, *2 (8th Dist.).

{¶41} The weight of the evidence and the credibility of the witnesses are determined by the trier of fact. *State v. Yarbrough*, 2002-Ohio-2126, ¶ 79. The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the trier of fact may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the

evidence." *State v. Johnson*, 2015-Ohio-3113, ¶ 61 (5th Dist.), citing *State v. Nivens,* 1996 WL 284714 (10th Dist.). The jury need not believe all of a witness' testimony, but may accept only portions of it as true. *Id.*

{¶42} Upon our review of the record, the jury could reasonably find appellant guilty of the charged offenses. Appellee's evidence included police body cam videos from the crash scene, allowing the jury to view appellant's speech and movements. Officers described the odor of an alcoholic beverage emanating from appellant's breath and stated his slurred, delayed speech was even more pronounced in person. Appellant admitted he had a "few shots of Patron" and consumed "a nice amount" of alcohol, while he continued to deny he was the driver. The jury was able to view appellant's growing concern and questions about consequences he faced as he implicitly acknowledged he was the driver.

{¶43} Appellant also acknowledged a concern that his marijuana use would be apparent if he submitted to chemical testing, which he therefore refused. As appellee points out, the jury may have inferred appellant's refusal to submit to a chemical test indicated knowledge and fear of the likely result, and therefore demonstrates consciousness of guilt. *State v. Farina*, 1987 WL 15374, *1 (5th Dist.), citing *Westerville v. Cunningham*, 15 Ohio St.2d 121 (1968) ["The refusal of one accused of intoxication to take a reasonably reliable chemical test for intoxication may have probative value on the question as to whether he was intoxicated at the time of such refusal."]

{¶44} Appellant further argues his excessive speed demonstrated by the evidence does not rise to the level of "recklessness" that would support a conviction upon R.C. 2903.06(A)(2)(a), supra. Grossly excessive speed, however, when combined with other

factors, will support a finding of recklessness. S*tate v. Skaggs*, 2010-Ohio-302, ¶ 47 (2nd Dist.).  The evidence in the instant case established appellant was driving more than two and a half times the posted speed limit when he lost control of the vehicle, resulting in a catastrophic rollover crash. The jury could reasonably find appellant's conduct was reckless.

{¶45} Finally, appellant argues the jury's guilty verdict upon Count I was "inconsistent" with its not-guilty verdict upon Count III, in which appellant was found not guilty of O.V.I. pursuant to R.C. 4511.19(A)(2)(a) and (b).  The elements of the Count III O.V.I. offense are as follows:

> (A)(2) No person who, within twenty years of the conduct described in division (A)(2)(a) of this section, previously has been convicted of or pleaded guilty to a violation of this division, a violation of division (A)(1) of this section, or any other equivalent offense shall do both of the following:
>
> (a) Operate any vehicle, streetcar, or trackless trolley within this state while under the influence of alcohol, a drug of abuse, or a combination of them;
>
> (b) Subsequent to being arrested for operating the vehicle, streetcar, or trackless trolley as described in division (A)(2)(a) of this section, being asked by a law enforcement officer to submit to a chemical test or tests under section 4511.191 of the Revised Code, and being advised by the officer in accordance with section 4511.192

of the Revised Code of the consequences of the person's refusal or

submission to the test or tests, refuse to submit to the test or tests.

{¶46} Count III, therefore, required appellee to prove 1) appellant operated a vehicle under the influence of alcohol, *and* 2) appellant refused to submit to a chemical test. The predicate offense of Count I, as noted supra, is causing the death of another "[a]s the proximate result of committing a violation of division (A) of section 4511.19…." To find appellant guilty of aggravated vehicular homicide in Count I, it was sufficient for the jury to find that appellant operated a motor vehicle while under the influence of alcohol or drugs, and that offense proximately caused the victim's death.  We need not speculate why the jury acquitted appellant upon Count III, which required proof of different elements.

{¶47} Moreover, the jury's verdicts also are not legally conflicting. A jury need not deliver rationally consistent verdicts in order for the verdicts to be upheld. *State v. Trewartha,* 2005–Ohio–5697, ¶ 15 (10th Dist.). As long as sufficient evidence supports the jury's verdict at issue, other seemingly inconsistent verdicts do not undermine the otherwise sufficient evidence. *Id.*

{¶48} Any inconsistencies in the evidence were for the trial court to resolve. *State v. Dotson*, 2017-Ohio-5565, ¶ 49 (5th Dist.). "The weight of the evidence concerns the inclination of the greater amount of credible evidence offered in a trial to support one side of the issue rather than the other." *State v. Delevie*, 2019-Ohio-3563, ¶ 30 (5th Dist.), appeal not allowed, 2020-Ohio-518, citing *State v. Brindley*, 2002-Ohio-2425, ¶ 16 (10th Dist.).

{¶49} Appellant's convictions are supported by sufficient evidence and are not against the manifest weight of the evidence. The first and third assignments of error are overruled.

II.

{¶50} In his second assignment of error, appellant argues the trial court should have instructed the jury upon the lesser misdemeanor offense of vehicular homicide pursuant to R.C. 2903.06(A)(3)(a) and (C). We disagree.

{¶51} A jury charge on a lesser-included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser or inferior offense. *State v. Bordeau*, 2023-Ohio-2040, ¶ 35 (5th Dist.), citing *State v. Thomas*, 40 Ohio St.3d 213, paragraph two of the syllabus (1988). In making this determination, the court must view the evidence in a light most favorable to the defendant. *State v. Smith*, 89 Ohio St.3d 323, 331 (2000). Nevertheless, an instruction is not warranted every time any evidence is presented on a lesser-included offense. There must be sufficient evidence to allow a jury to reasonably reject the greater offense and find the defendant guilty on a lesser-included offense. *State v. Shane*, 63 Ohio St.3d 630, 632-633 (1988); *State v. Conway*, 2006-Ohio-791, ¶ 134.

{¶52} When reviewing a trial court's jury instructions, the proper standard of review for an appellate court is whether the trial court's refusal to give a requested jury instruction constituted an abuse of discretion under the facts and circumstances of the case. *State v. Miku*, 2018-Ohio-1584, ¶ 53 (5th Dist.).

{¶53} Appellant was charged with one count of aggravated vehicular homicide, a felony of the second degree, pursuant to R.C. 2903.06(A)(1)(a) and (B)(2)(a), described

supra. He was also charged with a violation of aggravated vehicular homicide, a felony of the third degree, pursuant to R.C. 2903.06(A)(2)(a) and (B)(3), described supra.

{¶54} At trial, appellant request an instruction upon vehicular homicide, a first-degree misdemeanor, pursuant to R.C. 2903.06(A)(3)(a): "No person, while operating or participating in the operation of a motor vehicle, . . . shall cause the death of another or the unlawful termination of another's pregnancy in any of the following ways: ….Negligently[.]"

{¶55} Appellant argues the coroner opined M.I.'s death was "accidental," which should have allowed the jury to consider whether appellant's conduct was negligent. A person acts negligently when, because of a substantial lapse from due care, the person fails to perceive or avoid a risk that the person's conduct may cause a certain result or may be of a certain nature. R.C. 2901.22(D). A person is negligent with respect to circumstances when, because of a substantial lapse from due care, the person fails to perceive or avoid a risk that such circumstances may exist. *Id.*

{¶56} The trial court overruled appellant's motion for the misdemeanor instruction, noting appellant was driving two and a half times the posted speed limit around a significant curve. T. IV, 87-88. The trial court noted other evidence must also be considered, including appellant's admitted alcohol consumption and his complete loss of control of the vehicle. T. IV, 89. Upon consideration of all of the events leading to the crash, a reasonable jury would not be able to find appellant not guilty of aggravated vehicular homicide but guilty of vehicular homicide. T. IV, 90-91. The trial court concluded the evidence would not allow the jury to find appellant was anything less than reckless.

{¶57} We agree with the reasoning of the trial court. The evidence does not support a finding the crash was caused by mere negligence. See, *Bordeau*, supra, 2023-Ohio-2040, ¶ 43 (5th Dist.) Either the crash occurred because appellant was under the influence of alcohol, or because he drove recklessly. *Id.* We find the trial court did not abuse its discretion in failing to give the requested instruction, as the evidence did not reasonably support conviction of the lesser offense and acquittal of the greater.

{¶58} Appellant's second assignment of error is overruled.

### CONCLUSION

{¶59} Appellant's three assignments of error are overruled and the judgment of the Stark County Court of Common Pleas is affirmed.

By: Delaney, P.J.,

Baldwin, J. and

King, J., concur.